| | | |
|---|---|---|
| Faith Townsend<br>  Plaintiff | ( <br> ( <br> ( <br> ( <br> ( | Case No. |
| Vs | ( <br> ( <br> ( <br> ( | COMPLAINT |
| United States of America | ( | |

**FILED**

**DEC 29 2021**

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

**1:21 CV 2425**

**JUDGE OLIVER**

**MAG. JUDGE BAUGHMAN**

INTRODUCTION

This complaint has been filed against the United States of America and the bodies of government that has jurisdiction over the Federal Judges. The Plaintiff is seeking remedy for the harm caused by Federal Judge James Gwin in the Northern District of Ohio under statute 42USC1983, who's actions in his official capacity deprived her of constitutional rights granted to every citizen under the constitution's fourteenth amendment. Judge Gwin maliciously deprived the plaintiff of due process in a Title VII case before his court. Because there is currently no avenue to sue a federal judge for Judicial Misconduct, the plaintiff is seeking permission from congress to waive its sovereign immunity allow this lawsuit to proceed. The remedy sought here by the plaintiff is monetary but also to overturn the judgement that was a result of judicial misconduct. As an employer of federal judges, the US government is ultimately responsible for harm resulting from their misconduct, intentional or not. The Plaintiff is also requesting that congress examine the number of complaints against this judge and petition for impeachment.

FRCP RULE 60(b) FRCP Rule 60(b) provides that the court may relieve a party from a final judgment and sets forth the following six categories of reasons for which such relief may be granted: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59; (3) fraud, misrepresentation, or misconduct by an adverse party; (4) circumstances under which a judgment is void; (5) circumstances under which a judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. F.R.C.P. Rule 60(b)(1)-(b)(6). To be entitled to relief, the moving party must establish facts within one of the reasons enumerated in Rule 60(b).

Due Process

The Plaintiff Mrs. Faith Townsend filed suit 18cv02742 against her employer Rockwell Automation Inc. on November 28 2018. The case was assigned to Judge Gwin in the Northern District of Ohio. During his capacity as Judge for the United States of America Judge Gwin used his position to deprive this Plaintiff of her right to Due Process under the Fourteenth Amendment of the United States Constitution. His misconduct occurred during the pretrial phase and is also evident in the summary judgement document.

Case Management Conference

The Plaintiff states during the Case Management Meeting the Judge's conduct was biased in favor of the defendant. The plaintiff was forbidden to speak. She was only allowed to speak if asked a question by the judge. The judge asked the defendant pertinent questions about the case but did not allow the Plaintiff a chance to answer or rebut the same questions, nor did he ask any questions pertaining to the charges against the defendant. Judge Gwin did ask the plaintiff if anything other than the charges listed in the complaint occurred during her employment at Rockwell Automation. Plaintiff explained how she suspected that things had deteriorated to the point where she suspected the defendants were armed during an internal meeting and that Rockwell continued to deposit money into Plaintiff's bank account as wages then reported false information to the Unemployment agency to prevent her from receiving the benefits.

With no knowledge of the rules regarding the amendment cut-off date the Plaintiff left this item blank to be further discussed with the judge during the CMC planning meeting, however because she was not allowed to speak or even ask questions, the judge quietly discussed this with the defendant and set the final day to amending the complaint for the same day, as we set there in the meeting. Judge Gwin deliberately extracted information concerning additional charges then prevented her from amending the complaint in secrecy with the defendant, when the plaintiff stated she could not hear the dates, the Judge stated she would get them in the mailed order.

Judge Gwin announced during the CMC meeting that the Plaintiff would lose the case. He would time-bar all charges prior to Oct 17, 2017 and any evidence relating to those charges would not be heard. He stated Plaintiff Townsend would have a difficult time proving "constructive discharge". This statement was made in the presence of the defendants. The judge proceeded to attempt to calculate the settlement based on the plaintiff's salary and time she was suspended from work. When it was pointed out that the suspension was paid absence he through up his hands as if the plaintiff was not entitled to anything. The defendant there after refused to present any interrogatories and production document, nor participate in discovery. The plaintiff filed Motion to subpoenas to extract the documents from the defendants, instead the judge referred the matter to the magistrate, who ordered three deadlines for the defendant to hand over the production documents. Still, they refused. Finally, a formal hearing was held 2 days prior to the final pretrial status meeting on January 6, 2020 and the defendant was once again ordered by the magistrate to deliver the production documents by the end of the next day – 5:00pm January 7, 2020. However, The Plaintiff was forced to enter the exhibits on the January 6th without the documents from the defendant. The judge did not enter the plaintiffs exhibits into record until after his summary judgement on January 8, 2020.

The final Pretrial Status meeting on January 8, 2020

The Judge asked the defendant if the documentation provided to the plaintiff would impact the case in any way. The defendant answered no. Again the did not ask the Plaintiff, instead, he relied solely on the statement of the defendant that the information contained was unimpactful. The plaintiff's disagreement was ignored and she was not allowed the same opportunity to explain the pertinence of the document as it reflected on the facts of the case. He Separated the parties then pretended to explained to the Plaintiff what she would need to prove to support constructive discharge. He referenced a tablet with the screen so dark it was impossible to see, when she attempted to take it into her hands to view, she was told not to touch it. After speaking in confidence, with the defendant, he asked the plaintiff if she was upset about her son's death but not the events that involved her employer's agent's (supervisor) actions related to his funeral. He prior to Oct 17, 2017 then stated "I'll try to get you some money". He then attempted a settlement and set the trial date per the CMC schedule. By the time Plaintiff returned home Judge Gwin had entered a Summary judgement in the defendant's favor.

Track Assignment

The plaintiff adhered to the Track assignment schedule, answered interrogatories and provided Production documents timely. The defendant did not, without reprimand or sanction. The defendant was allowed an extra two weeks to examine the 4 gigs of evidence provided by the plaintiff, but plaintiff was not allowed any time at all to examine the document handed over from the defendant at 5pm January 7, 2019 18 hours prior to the final pretrial status meeting depriving the plaintiff the opportunity to formulate a response to the motion for summary judgement that would consider the impact of that document.

The Summary Judgement

Judge Gwin based his judgement on the following statements:

> Title VII of the Civil Rights Act of 196426 requires employees alleging discrimination or retaliation to file administrative charges with the EEOC before bringing litigation.27 While "a Title VII plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge," the Sixth Circuit interprets pro se employees' EEOC charges liberally "so that courts may also consider claims that are reasonably related to or grow out of the factual allegations in the EEOC charge."28 "[T]he general rule in this circuit [is] that the judicial complaint must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination."29

The EEOC complaint filed September 13, 2018 states:

> I began employment with Respondent in or around April 1996. My most recent position was Senior Engineering Analyst in the After-Hours dept. I previously filed EEOC Charge #846-2017-35978. During my employment, I was subjected to different terms and conditions of employment, including, but not limited to, being placed in all of the phone queues, 20 queues, while my four White male co-workers were only assigned to one queue, placing an unfair work load onto me and creating an unfair positive advantage for the rest of my work group. I have been demoted since my original complaint to Respondent concerning racial slurs and harassment from these co-workers. I believe this queue assignment is another instance of the harassment since my current supervisor has also participated in making derogatory racial remarks. Even after filing the

EEOC charge mentioned above the harassment has continued and progressed to the co-workers contacting me by text. Subsequently, I was suspended. On or about August 7, 2018, I was constructively discharged. I believe that I was discriminated against because of my race, Black, and in retaliation for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

>Complaint 1 - In the complaint filed with the court, Plaintiff charged that in 2009 she reported that she reported that some of the men in her department where not taking calls and she suffered a heavy work load because of it. No corrective action was taken and there was no follow up from Human Resources. This is the same complaint in both EEOC filings. The workload was manipulated to cause Plaintiff Townsend a disadvantage. The difference being by the time Mrs. Townsend filed the second EEOC complaint she had proof that management was participating. Inaction by the defendant culminated to the defendant's participation. HR and management could not could not say they were not aware because it is mentioned in the performance review. Changes in policy and procedure documents to support this charge were withheld from record. This charge should have not been tolled.

>Complaint items 2 and 3 - Plaintiff charged that she reported concerns for her safety and reported this several times to HR and supervisors. Audio of statements made to the legal department supports this. This was expressed in the 1st EEOC charge intake form and in her resignation letter, which the defendant referenced multiple times. This extended into the tolled period, and was on record with the court in Doc#36 exhibits Additional documents supporting this fact was withheld from court record. This evidence should have been considered in the judgement as it was not denied by the defendant.

>Complaint item 4 - Despite her complaints about the misuse of the callout (for assistance) cell phone, Supervisors allowed it. This is one of many examples of how the white men were the men were given preferential treatment. Instead of enforcing the policies and procedures, the supervisor simply changed the policy 3 times. This is the very issue that caused the plaintiff to send the email throughout the department. This document was on file when the judgement was entered and supporting evidence showing the extreme advantage it provided for the men was withheld from being entered into record.

>Complaint item 5 - Plaintiff states necessary equipment was withheld. A recording of her final supervisor as of her resignation admitting to not providing usable equipment. Stating what little he had provided had been disguarded by others, it was trash. Video of that same supervisor mounting broken equipment was withheld from the record.

>Complaint Item 6 - Supervisor sent a email to all the other supervisors making false degrading statements about plaintiff performance. Plaintiff was not afforded the opportunity to present witnesses to this fact. Judge Gwin informed plaintiff that depositions cost $5,000 each and must be held at the courthouse. However, the defendant held depositions in the attorney's office without any court representative. Also, with multiple people from Rockwell Automation on conference. Not in line with the Local and Federal rules regarding depositions.

>Complaint item 7 - 2013 Supervisors refuse to pay me overtime for cell phone coverage. This was 24/7/365 hour coverage for approximately 1 year. Evidence Held from the Record.

Complaint item 8 - Supervisor Denied PMP(Project Management Professional) Training

Complaint item 9 - 2014 Incorrect statistics negatively effects my performance review. This was done within an outside the tolled period an not disputed by the defendant. Held from Record.

Complaint item 10 - HR ignored my safety concern in reference to the men I worked with. Not disputed by defendant. Evidence contained in Doc#36 Exhibits showing communications to HR and Posting from facebook that was entered 1 day before she reported threating remarks in the workplace. It shows one of the men who made threatening remarks, standing behind a group of Black people stating its time to get his glock. This was within 1 day of him stating at work "The good thing about using a gun is you leave no witnesses".  These documents were ignored in the Summary Judgement.

Complaint item 11 - Unjustly Demoted- Evidence attached to Doc#53 show, despite receiving accolades on doing a "great job" she was demoted shortly after complaining to HR. evidence held from record

Complaint item 12 - SME Credentials evidence held from record.  Communications to her supervisor and the supervisor whom he assigned as her coach(in complaint 13) that achievement of this goal depends on weather co-workers likes you and not your performance. This iwould not work with the After-hours group and should not be a criteria for any employee. This was impossible for the plaintiff to achieve. This wasmIgnored by both supervisors as they were working together against plaintiff, the same as in item 13. Evidence with held

Complaint 13 - KCS Certification Sabotage. Evidence showing the Final Supervisor collaborated with another supervisor by assigning a supervisor as a coach to prevent plaintiff's achievement of this credential.  Also showing achievement would not have happened had the supervisor/coach not gone on maternity leave, despite other coaches recommending she be replaced as plaintiff Townsend's coach, this was ignored by plaintiff's supervisor. SME was achieved immediately upon coach reassignment. Evidence withheld from the record.

Complaint 14 - Supervisor participated in making racial slurs.  Final supervisor changes statement from "he didn't say it" to "he doesn't remember making this statement".

Complaint 15 - Supervisor changes department policy to give the men an undue advantage. Not denied by defendant. Evidence held from record.

Complaint 16 - Supervisor goes onto facebook and invades plaintiff's privacy, this is not the first occurrence in the Technical Support Department involving these men.  Evidence in the record and witness statement was forthcoming. Supervisor admits in his statement that the funeral information was provided to him by the men who had harassed plaintiff.

**Charges after Oct 7 2017 not timed barred EEOC complaint filed August 2017**

Complaint 17- Legal department not interested in hearing the recording of Supervisor making derogatory racial remarks about African Americans while speaking with my co-workers. After going through this legal process, now understanding this is not a complaint. However it shows that Rockwell did nothing to assist or investigate Plaintiffs charges.

Complaint 18 - I'm assigned to 20 call management queues while the other 4 men are assigned to one. Plaintiff had already supplied 2 documents showing this occurred in October and December of 2017. All other documents held from the record.

Complaint 19 - Suspended because of email. This email contained screen captures that show the plaintiff was assigned a disproportional workload all day on Dec. 2, 1017. Evidence withheld showed it occurred every weekend the plaintiff work after October 17 until the system was changed removing the queues.

Complaint 20 - Ombudsman helps co-workers reword their previous racial comments and investigates me instead. After going through this legal process, now understanding this is not a complaint. But it does show that regardless of the evidence from the investigation Rockwell Automation was not going to do anything to address the harassment the plaintiff was enduring, other than ignore it.

Complaint 21 - The Men are sending harassing text to my personal cell phone. No denial of this occurring, but the relevance dismissed.

Complaint 22 - Stress causes me to be hospitalized. After going through this legal process, now understanding this is not a complaint. However Rockwell cancelled Plaintiff medical insurance despite having her earnings to pay it. This was retaliation and should have been considered as it grew out of her claims of previous retaliation.

Complaint 23 - Resigned due to Safety and heath concerns. August 2018, Plaintiff submitted her resignation letter/email on August 7th as the stress of returning to this work environment was unrelenting. Things that occurred during the suspension followup meetings made it clear that Rockwell was not a safe environment for her. This was stated in the resignation letter, as well as her first mention of the HR rep being armed at the investigation meeting. She referred to it as "extreme precaution".

Complaint 24 - Filed Complaint with EEOC. Filed a second complaint with EEOC #532-2018-02669. After going through this legal process, now understanding this is not a complaint.

Complaint 25 - Rockwell Blocks Unemployment- This charge was not denied by the defendant or mentioned in the judgement. Evidence held from the record.

At the time of the summary Judgement the evidence on file submitted by the plaintiff on Oct 18, 2019 contained in the Doc#36 titled "Opposition to Summary judgement" with DVD exhibits 1005-1019. Exhibits 1008, 1009 and 1010 contained email documents and facebook post that showed the Plaintiff had communicated 4 times to the Human resourced department that she was concerned about her safety and had good reason to be and the

Ombudsman/legal department knew about it. It also showed her email had been hacked by her supervisor and the IT support person. Exhibit 1012 shows Plaintiffs expressing concern to her supervisor that a policy to achieve SME credentials in her department would not be appropriate due to the negative interactions, which Plaintiff had previously identified to the supervisor as race based. Also the supervisor misrepresenting the importance of the SME credential to discourage her participation. Exhibit 1012B the supervisor discussing the secret assistance provided to the men to aid in their performance. The plaintiff states her supervisor and other friends of the men that had been harassing her for years attended her son's funeral as proxy. The supervisor himself had previously made a racial slur. She stated that days afterwards he stopped responding to her text. Exhibit 1014 shows that immediately after her returned he continued to used the phone system as a weapon against her. She states this was not the first time she didn't discover the reason for the change in her workload until after her return from medical leave in Oct 2017. Exhibit 1015 is a snap shot from a video previously provided to the legal department showing her supervisor sabotaging her performance by mounting broken equipment in her work area. And 1016 is the email that was sent throughout the department showing the 20 extra work queue Plaintiff Townsend was secretly put into placed,while the men were place into 1. The screen shots are all dated December 2, 2017, showing this occurred all day. The defendant entered into evidence 2 documents provided in plaintiff's production documents. The email blast throughout the department that caused her suspension and the other an email Mrs. Townsend forwarded to herself documenting the disproportionate workload she face on her 1st day back from medical leave. This document shows 3 days that represents the work done on that weekend and is titled the "Last 3 days" which represents a full work week, contrary to Judge Gwin interpretation. Showing of the calls that were to be shared by 5 people, Mrs. Townsend created 20 cases of the total of 69. Evidence that this occurred every weekend the plaintiff worked, from oct 21 2017 until the queues were removed December 31, 2017 was held from record.

Judge Gwin based his summary judgement on the statement

> "[T]he general rule in this circuit [is] that the judicial complaint must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination."29

All the charges in the complaint are directly related to the EEOC charge, it states:

> During my employment, I was subjected to different terms and conditions of employment, including, but not limited to, being placed in all of the phone queues, 20 queues, while my four White male co-workers were only assigned to one queue, placing an unfair work load onto me and creating an unfair positive advantage for the rest of my work group

Plaintiff cited Harris vs Forklift 510 U.S. 17,21 and

> (a) The applicable standard, here reaffirmed, is stated in *Meritor Sav*ings Bank, FSB v. *Vinson,* 477 U. S. 57: Title VII is violated when the workplace is permeated with discriminatory behavior that is sufficiently severe or pervasive to create a discriminatorily hostile or abusive working environment, *id.,* at 64, 67. This standard requires an objectively hostile or abusive environment--one that a reasonable person would find hostile or abusive-as well as the victim's subjective perception that the environment is abusive. Pp.21-22.

> (b) Whether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances, which may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological wellbeing is relevant in determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required. Pp. 5-6.

Not only did Judge Gwin Time Barred all charges of preferential treatment, he barred any reference to them. These charges should have been allowed base on the concept of continuing violations embodied in this statue.

The documents of record presented to show the effects of the plaintiff being placed in 20 work queues were screen captures of reports generated by the call tracking system at Rockwell Automation Inc. Of the two documents of record from the Plaintiff, Judge Gwin only considered 1. He was not qualified to determine the validity of the screen shots. He mischaracterized it by stating it represented on point in time, and that it did not represent a full work week, which was not relevant or true. One screen shot was taken in Oct 2017 and the other Dec 2017-which showed this occurred all day. But he does not consider it in his judgement. He goes on to make a distinction between work load and call load, without any supporting documentation on what it actually means or any evidence produced by the defendant. However the defendant had turned over production that requested all evidence that would be used at trial. This evidence contained the workload he refers to. It showed the group handled 4535 calls. The end of year performance review document shows Mrs. Townsend's supervisor stated she took ½ of those calls with 6 employees working the After-hours group at the time. This is the reason she 1st reported to the HR department. Supporting documentation shows this went on for years. And finally, when she went on medical leave 2 people was consistently scheduled to cover her shift and sometimes a 3rd. The terminology in reference to the judgement could only come from discussing the evidence privately with the defendant. The screen shots he does reference were taken from the call system and could have been substantiated by the plaintiff as well as witnesses as to it validity had she been given the same opportunity as the defendant. The defendant did not produce any report from this system or any other system embodied at Rockwell Automation to refute the Plaintiff's report, a mere denial was sufficient to invalidate her evidence. Other supporting evidence held from the record showed this occurred as early as June 6 2017 and every weekend from Oct 21 through dec 30th 2017.

Judge Gwin goes on to state:

> C. Throughout briefing for summary judgment, Townsend's filings have alleged other factual misconduct, including the cancellation of her health insurance and disparate pay structures.48 Townsend did not make these claims in her complaint and cannot use them.49 Townsend cannot rely on these events to form a basis for her claims in this litigation either.Title VII Violations

Page **8** of **12**

In the initial complaint filing, item 7 clearly states issues directly involving pay. Items 9, 4, 11, 12, 13, 15 involves pay indirectly. Insurance payments are a form of pay.

Judge Gwin further diminishes the validity of the single document of evidence he considered by stating:

Plaintiff Townsend provides only circumstantial evidence to support her claim of racial discrimination. She alleges that she was treated differently from her co-workers when she was assigned a greater call volume. As discussed above, Townsend does not show a disproportionate call volume during the 2018 charge period.
But even if she could, this treatment does not qualify as an adverse employment action.
"Adverse employment actions are typically marked by a 'significant change in
employment status,' including "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."
"It must be 'more disruptive than a mere inconvenience or alteration of job responsibilities." "employment status,' including "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." "It must be 'more disruptive than a mere inconvenience or alteration of job responsibilities."

The evidence the judge held from the record contained emails showing when Mrs. Townsend reported she would not be in for work on June 17, 2017 two people was scheduled to cover her shift evey weekend she was out ,and a third person was still helping the men. Because she filed the 1st EEOC complaint this additional help was provided after she returned, for a while. Once the 90 days to file a lawsuit passed, things reverted back to "no more assistance". Additional documentation showing this had been going on for years was also held from the record. This was more than a mere inconvenience. The initial of it was in retaliation for Mrs. Townsend's complaint to her Supervisor and the HR department of the men's racial remarks and misconduct. This misconduct cause an extreme workload to Mrs. Townsend as far back as 2009 when she initially reported it to HR and Rockwell allowed the reported misconduct to continue and finally implemented it into the phone system. Documentation along with witness testimony would have proven that this conduct spanned several supervisors and was only directed toward Mrs. Townsend. Mrs. Townsend was told by the HR department, not to say anything more to the men, they would get comfortable and revert back to the misconduct and she would be watching (the phone system) and never followed up with her again. Evidence of a conversation with Rockwell's legal department about this was on record with the court. This collaborates that Rockwell was aware of what the men were doing and did nothing. Their participation was a failure to act. The Judges held supporting evidence from the record.

Judge states:

> While a plaintiff may provide evidence of past harassment as background, she must also identify acts contributing to the harassment that occurred during the charge period.62 The plaintiff must also "show that the work environment was both subjectively and objectively hostile; in other words, that the plaintiff not only perceived the work environment as hostile, but that a reasonable person would have found it hostile or abusive as well."63
> Townsend's complaint alleges that she experienced harassment when her co-workers sent her texts while she was on leave.64

> This is not objectively sufficient harassment. The content of the text is not hostile.65 And no reasonable person would find it hostile or abusive for a co-worker to message her while she was on leave.

While the judge states here, past harassment can be considered and evidence of current harassment. During the CMC meeting he stated no charges within the tolled period would be heard and no references to them, considered. The majority of the charges within the period being tolled are related to the one item within the charge period. They show a concerted effort that spanned multiple supervisors to create hardship for Plaintiff Townsend. 11 of the 17 charges within the tolled timeframe are directly related to creating a hardship for the Plaintiff, designed to diminish her performance and it was ultimately, revealed in the defendant's production documentation (provided January 7th 2020), her wages as well. The remainder reveals racism as the reason why. The contents of the text pointed out that white people go to school with people who become judges. It suggest that legal recourse would be futile. They know Mrs. Townsend had been fired (she did not know), which was collaborated in the cancelling of her health insurance both occurring while she was on medical leave. The text was delivered the same way all the other racial remarks were made, ex. In a comment or story made during a conversation where the plaintiff could here it as she outlines in charge 14 and the email blast the resulted in her suspension. However, this time the plaintiff was on medical leave so they communicated this story in a text. The thread was started by the Supervisor whom made a racial slur while speaking with them and invaded her sons funeral as their proxy, and doesn't not contain any work related issues.  Despite the judge's statements on the evidence, plaintiff provided many documents showing managements involvement, and the judge held it from the record and dismissed the texts harmless.

Discrimination, harassment and retaliation are acts that create a hostile work environment. Plaintiff provided multiple documents to show harassment was reported to the HR department.  Even the single document the Judge based his denial of hostile work environment is sufficient to allow previous acts of discrimination because she has always maintained that all the acts against her was designed to provide advantage to the white men and the reason was discrimination and retaliation for reporting them to the HR department.

Although the supervisor denies making the racial slur.  Any reasonable person would not change the workload of a person who has just retuned to work after the death of their child.  It would have been expected that, that person would not be fully functional, if functional at all.  To change their work assignment without their knowledge would only serve to diminish their performance. The same as not providing equipment, giving her co-workers her computer password, mounting broken equipment in her work area (exhibits in Doc 36), sabotaging the ability to achieve certification, misrepresenting the importance of achieving credentials. These are all things that could be proven.  The acts the assigned supervisor committed within the charge period, extending into the tolled period. All accomplishing the same goal.  This is not the conduct of someone that would go to a funeral to express condolences. They are the acts of someone who harbors racism and hatred.  This was harassment that extended outside the workplace. Documentation produced by the defendant shows the men who were harassing the plaintiff did indeed benefit from this work "reassignment" (as the judge describes it).  This production document would not be used to support the plaintiff's claims because the judge had stopped entering any documents into the record.  To disguise his deception, he also held motions from the defendant until after the judgement. But these motions were in fact granted, he simply ruled in defendants favor and ended the case.

Mrs. Townsend was forced to resign her employment. The legal department acknowledged that she had reported concern for her safety 4 times. After Plaintiff's first conversation with the legal department the extra 19 queues removed. The legal department stated the supervisor had every right to attend the funeral services. The men she complained about could not possibly be racist. Statements concerning hanging nooses, watermelon causing melanin desires to join the "Good ole boys" and the good thing about using a gun is that you leave no witnesses, were all statements the plaintiff simply misunderstood. In fact, she was the problem because she was disrespectful to her coworkers. After providing the legal department with documentation of the queue assignment and not receiving an explanation. Then having the queues removed. And never acknowledging there was a problem other than the plain The plaintiff realized the severity of the situation. A few days after the meeting with HR and legal dept. the Plaintiff realized the HR rep. was armed with a gun. She mentioned it in her resignation letter and describe this as "extreme precaution". It was also mention to the judge during the CMC. The act of the supervisor making a racial slur, then g onto the internet getting the location of the funeral service and showing up there, made an already toxic work environment dangerous. It was evident on a recording that, was on record with the court, that the HR rep. himself w concerned about Mrs. Townsend presence in the workplace because of what the supervisor had done(MP4 131208_ end of the recording). However, he had no concern for her. The resignation letter itself shows that Mrs. Townsend concerned for her safety. Any reasonable person would be outraged that the men whom she reported to the HR dep was now texting her at home while she was on medical leave caused by the stress of the entire situation relating to l working along-side them. Men who were fully aware of the reports as the investigation had recently ended. This te was deemed irrelevant and supporting evidence from the record. Had the judge excepted the text as it relates to the context of the charges and evidence, as he states he is allowed to consider the significance of the text would have be understood.

The Final piece of evidence was concerning a charge surrounding pay. The defendant was ordered to provide information showing salaries for the 5 employees in her department and the merit and bonus increases from the year 2009 through 2018. This is the information that the judge asked the defendant if it was of any significance in the final pretrial status meeting. This document in conjunction with documentation that shows individual employee performance, showed that the Plaintiff, despite a superior work performance would never receive a larger monetary compensation than the men. It also showed that each time she complained to HR or the supervisor she was retaliated against with a decrease in her merit percentage and this started in 2009 coinciding with her first complaint to the HR department. This is item 7 of the complaint filing. As discovery progressed, a partial production document was produced by the defendant that simply showed merit percentages but not the dollar amounts, was provided to the plaintiff in December 20, 2019. Plaintiff "Opposition to Summary Judgement" Doc# 53 and evidence submitted with it, expounded on this charge as it revealed the issue of being treated differently was more pervasive than she knew and stretched across multiple supervisors. This was enough to show that preferential treatment was provided to the white men and that it was not inline with the performance rating system. This charge was simply left out of the judgement. Additional documentation showing the severity of the supervisor's attacks against her by mounting broken equipment and giving the other members of the group her computer password went unacknowledged by the defendant and the judge. These acts extended into the tolled period. They could have and should have been considered according to the judges own words.

The inclusion and exclusion of evidence centers around what is advantageous to the defendant. As well as what charges to consider. The Judge says one thing and does another. This is evident in the judgement. He says he can consider related evidence but doesn't. He stated the trial would proceed on January 13 2020, but rendered judgement within minutes of the final status meeting. He held private meetings with the Defendant at the end of the CMC and Status meeting. He allowed the defendant an unreasonable number of opportunities and time to adhere to the discovery schedule but no time for the plaintiff to respond. When this caused chaos to the schedule adherence was forced upon the plaintiff. He withheld Plaintiff's evidence. The actions of this judge were directly in sync with the defendants arguments and objectives. Actions giving no weight to the plaintiff's evidence was obstructive to a fair decision. It makes it questionable if the judge examined the plaintiffs filing at all, or simply relied on the defendant's lawyer to tell him what they wanted him to know. The judgement leaves to question if the defendant's attorney authored it.

It was during the appeal process (1:18-cv20-3079) that plaintiff discovered the evidence was not on record. The fact that it was stamped by the clerk prior to the judgement was meaningless.

Plaintiff Townsend delivered production documents prior to the end of discovery December 23, 2019. And provided the exhibits January 6, this was ample time to see that if this evidence was on the record the trial would proceed and victory was not assured. This is the reason the court stopped logging anything into the record and his actions only benefited the defendant.

Plaintiff Townsend is seeking $3,000,000 in damages caused by Judge Gwin. She also wishes the judgement rendered by Judge Gwin be set aside and the Plaintiff case be relitigated.

U.S. House of Representatives/Division of Congress
Washington, DC 20515

Ohio Attorney General – Dave Yost
Rhodes State Office Tower
30 East Broad Street, 14th Floor, Columbus, OH 43215

U.S. Department of Justice – Merrick . Garland
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Mrs. Faith Townsend/ProSe
803 E. 155th
Cleveland, Ohio 44110
216-6471697

*Faith Townsend* 12-28-21